IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| STATE OF TEXAS,<br>    Plaintiff,<br><br>v.<br><br>YSLETA DEL SUR PUEBLO,<br>TIGUA GAMING AGENCY, THE TRIBAL<br>COUNCIL, TRIBAL GOVERNOR ART<br>SENCLAIR, and TRIBAL LIEUTENANT<br>GOVERNOR CARLOS HISA,<br>    Defendants. | §<br>§<br>§<br>§   NO. EP-99-CA-0320-GTE<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**DEFENDANTS' SECOND MOTION
FOR MODIFICATION OF THE SEPTEMBER 27, 2001, INJUNCTION**

To the Honorable G. Thomas Eisele, United States District Judge:

COMES NOW Ysleta del Sur Pueblo ("Pueblo"), Tigua Gaming Agency, the Tribal Council, Defendants in the above styled action, and file their Second Motion for Modification of the September 27, 2001, Injunction. Defendants would respectfully show unto the Court the following in support of its motion:

1.      In issuing its September 27, 2001 Injunction, this Court found that the Pueblo possessed sufficient attributes of an unincorporated association to be subject to the Texas Penal Code even though Indian tribes are not specifically identified in the Penal Code. In compliance with the injunction, the Pueblo submitted its application to the State of Texas for a license to conduct charitable bingo because it meets the qualifying standards of the Texas Charitable Bingo Enabling Act. This Court required the submission of the application to confirm that the Pueblo meets the standards. The Pueblo has clearly demonstrated to the Texas Lottery Commission that it does meet the standards. The Pueblo, as an Indian tribe, is a governmental entity and among its many roles are fraternal and religious responsibilities. Even though the Pueblo applied for the license in its religious

1

and fraternal roles, the Texas Lottery Commission refuses to issue the license because the Pueblo is not organized primarily for religious or fraternal purposes. This Court did not hold that the Pueblo cannot engage in charitable bingo unless the State specifically authorizes the conduct of such activities by Indian tribes. The Commission also refuses to issue the license for fear that the Pueblo may violate the Act's prohibition on political activity and per capita distributions. The Pueblo has eliminated any potential for violation of the prohibitions by requesting the license be issued to the Pueblo's persona, the non-profit Ysleta del Sur Pueblo Heritage Corporation. The State would retain the right to seek an injunction for any violations by the Pueblo of the gaming provisions of the Restoration Act. The Commission has engaged in a dilatory course of action comprised of spurious objections and requests information and documentation inapplicable to a governmental entity over whom the Sate has no regulatory jurisdiction. Why? Because the Commission's positions violate the spirit of this Court's order.

2.     On September 27, 2001 the Court entered its order granting Summary Judgment and Injunction in favor of Plaintiff. The Injunction provides, among other things, that Defendants are ordered to cease, desist, terminate, and refrain from conducting any gambling game from which they are likely to receive any economic benefit other than personal winnings, including, but not limited to, bingo or any variation thereof. See *Texas v. Ysleta del Sur Pueblo*, 220 F. Supp. 2d 668, 697-98 (W.D. Texas 2001).

3.     On March 1, 2002, Defendants filed their motion to reconsider, seeking a declaration that various proposed gaming activities do not violate the injunction, as well as a modification of the injunction to the extent it limits the Pueblo's ability to participate in legal gaming activities. This Court noted that the legal and practical effect of its injunction was to order the cessation of all gaming activities by the Defendants, legal or otherwise, and it treated the motion for reconsideration

2

as a motion to modify the injunction to permit gaming activities to which the Pueblo is otherwise qualified to participate in under Texas law. *Id.* at 702.

4. On May 14, 2002, the Court entered its Order Modifying the September 27, 2001 Injunction. The Court held that the Defendants had not shown that the Pueblo is "otherwise qualified" to participate in charitable bingo activities under Texas law. *Id.* at 707. The Court concluded that the Pueblo should be required to procure a license from the Texas Lottery Commission in order to make the "qualified showing" and ensure that its charitable bingo proposal is not in violation of the Texas Penal Code. *Id.* The Court further held that once having obtained a license from the State, the Pueblo's charitable bingo activities would not be subject to the Commission's regulatory scheme. *Id.*

5. By way of its general counsel's transmittal letter dated September 1, 2004, the Pueblo submitted its Texas Application for an Original License to Conduct Charitable Bingo to the Texas Lottery Commission. In the application, the Pueblo identified itself as a federally recognized Indian tribe enjoying a trust relationship with the United States, and indicated its type of non-profit organization is religious and fraternal. A true and correct of the Application for Original License along with the transmittal letter is attached hereto as Exhibit "A" and, by reference, is incorporated herein for all purposes as if set forth at length.

6. By way of letter to the Pueblo dated September 16, 2004, the Texas Lottery Commission acknowledged receipt of the Original Application and requested further information. Very little of the information requested is specifically required by statute. While some of the information requested concerned the Pueblo's status as a fraternal association or religious society, most of the information was requested to enable the Commission to impose its regulatory scheme on the Pueblo. A true and correct copy of the September 16, 2004 letter is attached hereto as Exhibit

3

"B" and, by reference, is incorporated herein for all purposes as if set forth at length.

7.   By way of its general counsel's transmittal letter of September 30, 2004, Ysleta del Sur Pueblo submitted the requested information and documentation or provided a satisfactory reason why such information or documentation would not be provided. A true and correct of the September 30, 2004 transmittal letter with accompanying documents is attached hereto as Exhibit "C" and, by reference, is incorporated herein for all purposes as if set forth at length.

8.   By way of letter to the Pueblo dated October 25, 2004, the Texas Lottery Commission acknowledged receipt of the additional information and documentation, and requested further information and documentation. The requested information and documentation focused on the status of the Pueblo as a fraternal association or religious society, and also requested information to enable the Commission to impose its regulatory scheme on the Pueblo. Very little of the requested information is specifically required by statute. A true and correct of the October 25, 2004 letter is attached hereto as Exhibit "D" and, by reference, is incorporated herein for all purposes as if set forth at length.

9.   By way of its general counsel's transmittal letter of October 28, 2004, Ysleta del Sur Pueblo submitted the requested information and documentation or provided a satisfactory reason why such information or documentation would not be provided. The transmittal letter contains an extensive discussion of the religious and fraternal roles of the Pueblo. A true and correct of the September 30, 2004 letter with accompanying documents is attached hereto as Exhibit "E" and, by reference, is incorporated herein for all purposes as if set forth at length.

10.   By way of letter to the Pueblo dated November 23, 2004, the Texas Lottery Commission expressed its erroneous understanding that the Pueblo no longer wished to pursue qualification as a fraternal organization and requested more information concerning the religious

4

nature of Ysleta del Sur Pueblo as well as information which would enable the Commission to impose its regulatory scheme on the Pueblo. A true and correct of the Lottery Commission's November 23, 2004 letter is attached hereto as Exhibit "F" and, by reference, is incorporated herein for all purposes as if set forth at length.

11. On the same date, general counsel for Ysleta del Sur Pueblo replied to the November 23, 2004 letter of the Texas Lottery Commission with its own letter refuting the Commission's erroneous understanding and providing additional information concerning the religious nature of the Pueblo. The Pueblo rejected the Commission's attempt to impose its regulatory scheme on the Pueblo by requiring its workers come only from a register of employees maintained by the Commission. A true and correct of the reply letter of November 23, 2004 reply letter is attached hereto as Exhibit "G" and, by reference, is incorporated herein for all purposes as if set forth at length.

12. By way of letter dated November 24, 2004, general counsel for Ysleta del Pueblo made further reply to the November 23, 2004 letter of the Texas Lottery Commission concerning the fraternal association aspects of the Pueblo. A true and correct of the of November 24, 2004 additional reply letter is attached hereto as Exhibit "H" and, by reference, is incorporated herein for all purposes as if set forth at length.

13. By way of letter dated December 10, 2004 to general counsel for the Pueblo, the Texas Lottery Commission set forth various unresolved matters preventing approval of the Application for Original License and requested additional information on those matters. The Commission states that it cannot issue a license to an applicant unless it is organized primarily for fraternal or religious purposes. The Commission also expresses its concern that the Pueblo will not heed the limitations in the Texas Charitable Bingo Enabling Act concerning limitations on the

frequency and duration of bingo sessions, the number and sizes of prizes, political activities of those involved in a fraternal association, and the disbursement of gaming proceeds to individuals. A true and correct of the letter of December 10, 2004 is attached hereto as Exhibit "I" and, by reference, is incorporated herein for all purposes as if set forth at length.

14. By way of letter dated December 15, 2004, general counsel for the Pueblo further made further reply to the December 10, 2004 letter of the Texas Lottery Commission. The letter sums up the position of the Commission which the Commission refuses to explicitly state: it is reluctant to grant a license to the Pueblo because Indian tribes are not specifically named in the Charitable Bingo Enabling Act as an eligible participant. A true and correct of the additional reply letter of December 15, 2004 is attached hereto as Exhibit "J" and, by reference, is incorporated herein for all purposes as if set forth at length.

15. By way of transmittal letter dated December 29, 2004, general counsel for the Pueblo further replied to the December 10, 2004 letter of the Texas Lottery Commission. In the transmittal letter, the Pueblo requests that the license be issued to the Ysleta del Sur Pueblo Heritage Corporation, a nonprofit corporation which is specifically prohibited from engaging in activities prohibited by the Texas Charitable Bingo Enabling Act. The Pueblo chartered the Ysleta del Sur Pueblo Heritage Corporation in 2003 under tribal law. The Pueblo amended the Corporation's Articles of Incorporation to limit the purpose for which it is organized to charitable purposes. The amended articles permit the Corporation to conduct charitable bingo, but specifically prohibits those activities prohibited by the Texas Charitable Bingo Enabling Act including limitations on the frequency and duration of bingo sessions, the number and sizes of prizes, political activities of those involved in a fraternal association, and the disbursement of gaming proceeds to individuals. As stated in the transmittal letter, the Corporation serves as the alter ego of the Pueblo with respect to

its fraternal responsibilities thus meeting the Commission's position that the organization be primarily organized for fraternal purposes. The reply concludes by requesting the prompt issuance of the license so that the Pueblo can file its motion to modify the injunction. A true and correct copy of the second additional reply letter of December 29, 2004 is attached hereto as Exhibit "L" and, by reference, is incorporated herein for all purposes as if set forth at length.

16. By way of letter to the Pueblo dated January 24, 2005, the Texas Lottery Commission ignored the fact that the Corporation serves as the alter ego of the Pueblo, and requested that the Corporation submit to the Lottery Commission an Application for an Original License with completed schedules and other documentation. Pertinent requested information is already in the possession of the Commission and the rest, such as copies of articles of incorporation file-stamped the secretary of state, is but yet another attempt of the Commission to subject the Pueblo to the regulatory jurisdiction of the State of Texas. A true and correct of the letter of January 24, 2005 is attached hereto as Exhibit "L" and, by reference, is incorporated herein for all purposes as if set forth at length.

17. May the Pueblo, as a federally recognized Indian tribe, engage in charitable bingo on its reservation, in its own right or through a Pueblo-chartered nonprofit corporation, if –

(A) the proceeds are used exclusively for the charitable, religious, scientific, literary, or educational purposes of the Ysleta del Sur Pueblo either directly or by contribution to organizations that qualify as exempt organizations under Section 501(c)(3) of the Internal Revenue Code and its Regulations as they now exist or as they may hereafter be amended;

(B) no person is authorized on behalf of its membership, governing body, or officers to support or oppose a particular candidate for public office by making political speeches, passing out cards or other political literature, writing letters, signing or circulating petitions, making campaign

contributions, or soliciting votes;

(C) it does not conduct a bingo occasion more often than three days during a calendar week and not to exceed more than four hours during a 24-hour period, but may conduct two bingo occasions during a 24-hour period;

(D) it does may not offer a bingo prize having a value of more than $750 for a single game and, for bingo games other than pull-tab bingo, may not offer or award on a single bingo occasion prizes with an aggregate value of more than $2,500, award or offer to award a door prize with a value of more than $250; and,

(E) it does not make any per capita distribution of any of the proceeds from charitable bingo activities but shall use such proceeds as provided in the Texas Charitable Bingo Enabling Act?

18. The Commission's position violates the spirit of this Court's order that the Pueblo show it is "otherwise qualified" to participate in charitable bingo activities under Texas law. This Court did not hold the Pueblo cannot engage in charitable bingo, nor did this Court hold that charitable gaming by the Pueblo must be explicitly authorized by the Texas legislature. The Pueblo has met this Court's burden. Its fraternal responsibilities have been delegated to a tribally-chartered, non-profit corporation whose Articles of Incorporation contain the substantive limitations of the Texas Charitable Enabling Act as identified by the Lottery Commission in its December 10, 2004 letter.

19. To subject the Pueblo's ability to engage in bingo activities to the explicit consent of the Texas legislature is to invite continued state discrimination against the Pueblo. Those times the State has dealt with Indian tribes on gaming matters, it has been on a discriminatory or anti-competitive basis. For example, in 1993, State Senator Ike Harris explained a House amendment

to Senate Bill 522 amending the term "gambling device" in the Texas Penal Code by stating, "The House put an amendment on there just on the safe side that it did not include any of those games that might be allowed on Indian reservations[.]" Debate on Tex. S.B. 522 on the Floor of the Senate, 73rd Leg. (May 31, 1993). As another example, the Texas Racing Act makes it a third degree felony for anyone to wager on the result of a greyhound or horse race conducted on an American Indian reservation or trust land within the state if not held under the supervision of the Texas Racing Commission. Tex. Rev. Civ. Stat. Ann. art. 179e, § 14.05 (Vernon pamp. 2004).

20.   Nothing permits the State to impose a regulatory scheme on the Pueblo through its licensing procedures. The Pueblo has brought itself in compliance with all substantive aspects of the Texas Charitable Bingo Enabling Act. The State is engaged in discriminatory practices against a federally recognized, governmental entity and native Americans in contravention of this Court's order.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request the Court, upon notice and hearing, to enter an Order modifying the Court's September 27, 2001 Injunction to permit the Pueblo to conduct charitable bingo activities on its reservation subject only to those prohibitions found in the Texas Charitable Bingo Enabling Act..

Respectfully submitted,

DIAMOND RASH, P.C.
300 E. Main Drive, Suite 725
El Paso, Texas 79901
Telephone: (915) 533-2277
Facsimile: (915) 545-4628

By: _____
TOM DIAMOND
Texas State Bar No. 05804000
RONALD L. JACKSON

9

Texas State Bar No. 10494980
Attorneys for Defendants

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendants' Second Motion for Modification of the September 27, 2001, Injunction was sent via Federal Express to Texas Attorney General Greg Abbott, at 300 West 15th St., 10th Floor, Austin, Texas 78701, on the _____ day of February, 2005.

_____
TOM DIAMOND