IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, | § | |
|    *Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | |
| YSLETA DEL SUR PUEBLO, TIGUA | § | |
| GAMING AGENCY, THE TRIBAL | § | |
| COUNCIL, TRIBAL GOVERNOR | § | NO. EP-99-CA-0320-H |
| FRANCISCO PAIZ OR HIS SUCCESSOR, | § | |
| DIAMOND GAME ENTERPRISES, | § | |
| ACCELERATED MARKETING | § | |
| SOLUTIONS LLC, WINTER SKY, LLC, and | § | |
| XCITE AMUSEMENT, INC., | § | |
|    *Defendants* | § | |

## PLAINTIFF'S SECOND MOTION FOR CONTEMPT
## FOR VIOLATION OF THE SEPTEMBER 27, 2001 INJUNCTION

TO THE HONORABLE JUDGE HARRY LEE HUDSPETH:

    Plaintiff The State of Texas files this, its Second Motion for Contempt, for violation of the September 27, 2001 Injunction, and in support thereof, would respectfully show the Court the following:

### I.
### PARTIES

Plaintiff is the STATE OF TEXAS represented by the Office of Attorney General.

    Defendant YSLETA DEL SUR PUEBLO, a federally recognized Tribe pursuant to the Restoration Act, 25 U.S.C. § 1300g-6 (c); Defendant TIGUA GAMING AGENCY, Defendant THE TRIBAL COUNCIL, and Defendant TRIBAL GOVERNOR FRANCISCO PAIZ OR HIS SUCCESSOR are represented by their attorney Mr. Randolph H. Barnhouse Luebben Johnson & Barnhouse, L.L.P., 7424 4th Street, N.W., Los Ranchos De Albuquerque, NM 87107, and may be served with citation at this address.

1

Respondent DIAMOND GAME ENTERPRISES is a foreign corporation represented by Mr. Robert Francis Johnson III, Gardere Wynne Sewell L.L.P., 600 Congress Ave Ste 3000, Austin, TX 78701-2978 and may be served with citation at this address.

Respondent ACCELERATED MARKETING SOLUTIONS LLC, is a foreign corporation and may be served with citation at 3610 N JOSEY LN, CARROLLTON, TX 75007-3100.

Respondent WINTER SKY, LLC is a foreign corporation and may be served with citation at Capitol Services Address in Texas, 800 Brazos Street, Austin, TX., 78701. (attorney Brant Martin).

Respondent XCITE AMUSEMENT, INC., is a foreign corporation and may be served with citation by serving ANGEL HAMM at 22890 FOREST ROAD, RAPID CITY, SD 57702-8507.

## II.
## STANDARD

"A movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence (1) that a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *Seven Arts Pictures, Inc., v. Jonesfilm,* 2013 WL 599661, p. 2 (5th Cir., 2013, unpublished).

## III.
## CASE HISTORY

1.  *Restoration Act Tribe*: In *Ysleta Del Sur Pueblo v. State of Texas,* 36 F.3d 1325 (5th Cir. 1994) (*"Ysleta I"*) the Court found that the Tribe is organized pursuant to the Restoration Act, 25 U.S.C. § 1300g-6 (c) and that "All gaming activities which are prohibited by the laws of the state of Texas are prohibited on the reservation and on lands of the tribe." *Ysleta I, id.* at 1332. The Fifth Circuit went further and held that under the Restoration Act, Texas law "functions as

2

surrogate federal law . . . the Tribe has already made its 'compact' with the State of Texas, and the Restoration Act embodies that compact. If the Ysleta del Sur Pueblo wishes to vitiate the compact it made to secure passage of the Restoration Act, it will have to petition Congress to amend or repeal the Restoration Act rather than merely comply with the procedures of IGRA." *Ysleta I, id.* at 1335. In 1994, the Defendant Tigua Tribe opened Speaking Rock Casino (now Entertainment Center). Last year, the Tribe also opened the Socorro Entertainment Center

2.     *09/27/01 Permanent injunction:* On September 27, 2001, this Court in *Texas v. Ysleta Del Sur Pueblo et al.,,* 220 F.Supp.2d 668 (W.D. Tex. 2001 & Order Modifying Opinion 2002) entered a permanent injunction enjoining the Tribe, Ysleta del Sur Pueblo, the Tigua Gaming Agency, the Tribal Council of the Ysleta del Sur Pueblo, the Tribal Governor Albert Alvidrez, the Tribal Lieutenant Governor Filbert Candelaria, the Gaming Commissioner Francisco Hernandez, and the officers, agents, servants, employees, and attorneys of the foregoing persons and parties[1] "to CEASE, DESIST, TERMINATE AND REFRAIN FROM engaging in, permitting, promoting, and conducting activities at the Speaking Rock Casino in violation of Chapter 47 of the Texas Penal Code, and 25 U.S.C. § 1300g of the Restoration Act, including but not limited to the following activities:

    A.    Gambling activities played with cards, dice, balls, or any other gambling device where some, any or all of the persons and parties enjoined receive an economic benefit. Specifically prohibited are: all card games; all dice games; all games using one or more balls and or a spinning wheel; and games involving a vertical spinning wheel, which require players to pay a monetary fee, whether such fee is designated an "Ante," "Rake," Service Charge or otherwise.

    B.    Gambling activities played with cards, dice, balls, or any other gambling device some, any or all of the persons and parties enjoined charge or collect or attempt to

---

[1] *Texas v. Del Sur Pueblo,* 220 F. Supp.2d , at 700.

          collect any monetary fee as a requirement for any person to bet on or play any game played with cards, dice, ball or any other gambling device, whether such fee is designated by "Ante," "Rake," Service Charge or otherwise.

    C.    Gambling activities played with cards, dice, balls, Keno tickets, bingo cards, slot machines, or any other gambling device where some, any or all of the persons and parties enjoined act directly or indirectly as the "house" or "banker" in the same fashion as the operator of the gambling casino.

    D.    Providing to any person for his/her use a slot machine, the operation of which results in or is calculated to result in an economic benefit to the owner or lessor of the slot machine.

    E.    Conducting any gambling game from which any person or party enjoined herein is likely to receive any economic benefit other than personal winnings, including, but not limited to:
          1. Bingo or any variation thereof;
          2. Scratch tickets, peel tickets, or pull tabs;
          3. Keno or any variation thereof;
          4. Tigua Dice, Craps, or any variations thereof;
          5. Slot Machines;
          6. Poker card games;
          7. Betting on horse races or dog races;
          8. Tigua 21, Blackjack, or any variations thereof;
          9. Wheel of Fortune, Big Six Wheel, or any variations of wheel games.

    F.    Allowing other persons or entities to engage in any of the above activities on the premises of the Speaking Rock Casino or anywhere upon the reservation lands of the Ysleta del Sur Pueblo or upon any other lands of said Tribe."

*Id.*, at pp.697-698.

3.    <u>*Non-cash gambling device exception*</u>: In the same permanent injunction Order, this Court ruled that eight-liners were prohibited unless they met the § 47.01(4)(B) Tex.Penal Code exception that reward the player "exclusively with noncash merchandises, prizes, toys or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $5, whichever is less." *Hardy v. State,* 50 S.W.3d 689, 697 (Tex.App.2001), quoting Tex. Penal Code Ann. See § 47.01(4)(B), Texas Penal Code.

4. *3rd Party and Tribal Sweepstakes*:Sweepstakes games were also addressed in two parts at pp. 705-706 of the 2001 Injunction Order where the Court stated that Defendants engage in (i) "third-party giveaway contests conducted by national vendors" and (ii) that they engage in "Tribal sweepstakes activities."

5. *Non-cash prize 3rd party Vendor Sweepstakes*: The "third-party giveaway contests conducted by national vendors" are national sweepstakes conducted by national vendors to the extent that any such contest does not violate Texas gaming law. All of the examples of third-party vendor sweepstakes did not involve payment of any cash prizes, and instead were merchandise prize sweepstakes common today.[2] *Ysleta II,* 220 F.Supp.2d at 705-07. The Court analyzed these national sweepstakes to be "of a type that are common at fuel stations and grocery stores across the country….To the extent any such contest violates Texas gaming law, it continues to be prohibited by the injunction." *Id.*

6. *Tribal Sweepstakes*: The second type of Sweepstakes, the Tribal sweepstakes, were enjoined in that 2001 Order, *Id.*, 705-706, but the Court left the door open for the Tribe to later apply for permission from the Court to operate a sweepstakes and held that "The Court will not modify the injunction to permit the Tribe to conduct a sweepstakes absent a firm and detailed proposal showing that said sweepstakes would be in compliance with Texas law." *Id.*

7. *All Tribal Gaming with cash prizes enjoined:* The Tribe did not appeal denial of its Tribal

---

[2] The Court cites the following examples of national third-party vendor contests: (1) *The Mobil 1* Advantage-receive a *Mobil 1* Road Atlas / Travel Guide or Trip Maker CD with a purchase of Mobil 1 synthetic service; (2) The *Mobil 1* 25th Anniversary Dream Lease Sweepstakes-register to win a two year lease on a Corvette / Mercedes-Benz / Porsche; and (3) *Mobil 1* Synthetic Service-replica NASCAR promotion or (1) Nestles Crunch-win instantly a SUV or tickets to the 2002 NBA Finals; (2) M&M's Crispy-win one of one million instant prizes; (3) Corn Nuts-win a trip

5

sweepstakes operations, and instead chose only to appeal denial of charitable bingo, carnival contests, and promotional player pool activities, which appeal was unsuccessful, and the Trial Court's permanent injunction Order remained in effect. See *Ysleta II* opinion, *State of Texas v. Pueblo, et al.,* 2003 WL21356043 (5th Cir. 2003, cert. den. 540 U.S. 985, 124 S.Ct. 497 (2003)). Had the Tribe followed the law and obeyed this injunction, the Tribe would have lost millions of dollars in revenues each year.[3]

8.  *Original contempt motion for cash prizes*: In 2008, Plaintiff State of Texas filed its first motion for contempt, and, following an evidentiary hearing, this Court granted the motion for contempt and ordered the Defendants to cease operation of their "…gaming devices in a manner that rewards the player with cash or the equivalent of cash, including but not limited to gift cards, credit cards, or debit cards, in violation of the Texas Penal Code." See Dkt#281 Memorandum Opinion granting Motion for Contempt at pp.8-9. As part of this Order the Tribe was ordered to make its records and site available for inspection by the Plaintiff for limited purposes. That Order was appealed by the Tribe but the appeal was unsuccessful and the right of inspection was upheld by the Fifth Circuit, *Texas v. Ysleta del Sur Pueblo, et al.,* 2011 WL 2583615 (5th Cir. 2011, cert. den. 132 S.Ct. 1028, 2012).

9.  *No cash prize Sweepstakes currently permitted*: In its Order of July 30, 2009 that Defendants' sweepstakes operations "in which the player pays cash to obtain a prepaid internet

---

to Wrestle Mania; etc." *Texas,* 220 F.Supp.2d at 705.
[3] See *Texas v. Ysleta Del Sur Pueblo et al.,* 220 F.Supp.2d 668, 688 (W.D. Tex. 2001 & Order Modifying Opinion 2002). See also p. 2 of Dkt#287-2 , ¶ 5 in the Affidavit of Karl Maahs, General Manager of Speaking Rock, who testified that these "sweepstakes" have been operated since August 2007 (despite the prior Court Order to the contrary).

access card, then uses the card to activate a video terminal in search of a cash prize" is more like a "prohibited lottery than a legal sweepstakes operation.  See Tex.Penal Code § 47.01(7)." *Id.*, at p. 8.  As of July 30, 2009, no "sweepstakes" involving paying cash to obtain cash prizes should have been operated by Defendants.[4]

10.  *No Tribal Sweepstakes Proposal ever approved*: This Court further noted that it had never approved a Tribal sweepstakes proposal as required by the original permanent injunction order. *Id.* As a result, the Tribe did later submit a Sweepstakes proposal and by Dkt#337 Order this Court denied their proposal as being incomplete and denied it without prejudice. *Id.*

### IV.
### COMPUTER DEVICES AWARDING CASH PRIZES VIOLATE RESTORATION ACT AND THE COURT'S 2001 INJUNCTION AS MODIFIED

11.  *Tribe chose to continue violating Contempt Order*: The Tribe chose not to appeal the Dkt#337 Order, nor to properly submit any new applications to operate a Sweepstakes on lands controlled by the Tribe that pay cash prizes. Instead, Defendants simply reformulated their previously denied gambling operations into "third party-vendor national sweepstakes" and continued on, with the Respondents here, in violation of the Restoration Act and of this Court's injunction.

12.  *Plaintiff learns of continued violation by Defendants/Respondents:* On March 13, 2012 and May 08, 2012, undercover inspections were conducted by peace officers in the Criminal Investigations Division of the Office of Attorney General. As shown in Exhibit 4 Report, they

---

[4] See Footnote 3 reference to August 21, 2009 Affidavit by Defendant's General Manager that the Tribal sweepstakes operation continued forward, despite Court Orders to the contrary.

7

found violations of Chapter 47 of the Texas Penal Code at both Speaking Rock and Socorro Entertainment Centers. When informed of these complaints and of the possible need for a Second Motion for Contempt, the Tribe's and some of the vendors' attorneys met with Plaintiff's legal team on October 15, 2012 to discuss possible out of court resolution of the current violations of this Court's injunction. No consensus was reached at that meeting.

13.   *Defendants/Respondents continue gambling operations*: The Tribe and the third-party Respondent vendors steadfastly refused to cease operations,[5] and apply for consent from this Court before conducting further gambling activities resulting in cash payouts for prizes. They did send a letter with some details of their vendor software for gambling conducted on both locations on November 27, 2012 and those specifications of gaming are included in Plaintiff's Exhibits 1-3 attached hereto and clearly show consideration, chance, and cash prize payouts.

14.   *Examples of cash prize payouts*: The 2012 inspection showed:

    A.   American Dream 777: a single $2 wager yielded $146.25 and paid out as a "winning voucher" when player elected "cash option."

    B.   Black Widow #2: a single $2 wager won $15.25, paid out as cash option.

    C.   Similar results with minimal $2 wagers and even larger cash payments reported with other gambling devices named Tribe Treasure (IPT-80); Super Seven; New York, New York: (AU-165); Robbin (GW-266); Frost Bite (EC-186); Triple 777; Speedy Money; Wicked Mad Hot (EC-179); Deep Sea Party; Pretty Woman; Wild Billy; Bustin Vegas, and a host of other similar gambling devices.

15.   *Gambling devices not meet § 47.01(4)(B) exception*: These gambling devices are still in use both at Speaking Rock and at Socorro Entertainment Centers as observed recently. They do not fall within the limited exception of Penal Code § 47.01(4)(B) for two reasons. First, the

8

players on these devices are *not* rewarded "exclusively with noncash merchandise prizes, toys, or novelties." The award was straight cash. Second, on non-cash awards, there is a limitation that the awards given on a single play of these games or devices cannot exceed the $5 maximum and "10 Times (consideration) Rule."[6]

16.     *Operations do not meet 3rd-party vendor exception:* The Respondent third-party vendors' current "sweepstakes" scheme involves the use of video terminals connected to internet terminals and it is not apparent what national sweepstakes the third-party vendors are promoting. The evidence shows only customers' submitting money to the Defendant Tribe itself, and, more importantly, all of the machines pay out prizes in cash. See Ex. 5 Declaration of Lt. Tom Loper.

17.     *Defendants/Respondents' Sweepstakes violate Texas law*: In *U.S. V. Davis,* 690 F.3d 330 (5th Cir. 2012, cert. den. 133 S.Ct. 1283, and 133 S.Ct. 1296), the Court upheld the criminal convictions of the defendants by holding that the sweepstakes operations used "electronic gambling devices" which violated three Texas state laws including "…gambling promotion, keeping a gambling place, and possessing a gambling device, equipment or paraphernalia. Tex. Penal Code Ann. §§ 47.03, 47.04, 47.06."

> …a person is guilty of "gambling promotion" if the Government proves that he "intentionally or knowingly" "operates or participates in the earnings of a gambling place" or "for gain, sets up or promotes any lottery or sells or offers to sell or knowingly possesses for transfer, or transfers any card, stub, ticket, check, or other device designed to serve as evidence of participation in any lottery." *Id.* § 47.03(a)(1), (5)….
>
> A person is guilty of "keeping a gambling place" if the Government proves that he "uses or permits another to use as a gambling place any real estate, building, room, tent, vehicle, boat, or other property whatsoever owned by him or under his control, or rents or

---

[5] One vendor, APT, voluntarily ceased operations recently, and is not included as a Respondent here.
[6] See Report, Plaintiff's Ex. 4.

9

> lets any such property with a view or expectation that it be so used." Id. § 47.04(a). A "gambling place" is "any real estate, building, room, tent, vehicle, boat, or other property whatsoever, one of the uses of which is ... the conducting of a lottery or the playing of gambling devices." *Id.* § 47.01(3)….
>
> A person is guilty of "possession of gambling device, equipment, or paraphernalia" if, "with the intent to further gambling, he knowingly owns, manufactures, transfers, or possesses any gambling device that he knows is designed for gambling purposes or any equipment that he knows is designed as a subassembly or essential part of a gambling device" or "if, with the intent to further gambling, the person knowingly owns, manufactures, transfers commercially, or possesses gambling paraphernalia." *Id.* § 47.06(a), (c).
> *Id.,* at p. 332.

18. *3rd party vendor sweepstakes is illegal lottery:* In *Davis*, the Fifth Circuit defined an illegal lottery to require: "(a) A prize or prizes[;] (b) the award or distribution of the prize or prizes by chance; [and] (c) the payment either directly or indirectly by the participants of a consideration for the right or privilege of participating." *Brice v. State*, 242 S.W.2d 433, 434 (1951)." Here the third-party vendor Respondents operate the same schema employed in *Davis:*

   A.   **cash prizes**: "offered a sweepstakes promotion that allowed customers to win cash prizes" p.333 --which is also true in the instant case of the three Respondents as shown in their descriptions of the games at Speaking Rock and Socorro Centers. See Ex. 1 *Diamond Games* p. 2 "The donor can take the receipt to a cashier station to receive any cash that is due." and Ex. 3 *Winter Sky* p.1 "The sweepstakes prizes are cash prizes in varying amounts." See Ex. 5 Declaration of Lt. Loper.

   B.   **chance:** "The software then shuffled the universe of entries so that the winning entries were randomly distributed." p.333--which is also true in the instant case of the three Respondents. See Ex. 1 *Diamond Games* p. 1 "These electronic 'tickets' are shuffled once by the computer…"; Ex. 2 *Accelerated Marketing* p.1 "The entries delivered to the participants are randomly drawn from the same fixed finite pool of entries"; and Ex. 3 *Winter Sky* p.2 "The sweepstakes system randomly selects the tickets provided to each individual from the finite ticket pool…" See Ex. 5 Declaration of Lt. Loper.

10

  C. **consideration paid**: "Participants either received a limited number of sweepstakes entries each day without purchasing Internet time, or received entries free with the purchase of internet time." p. 337.since in *Davis,* as here, there were free entries, the Court designed a test for consideration to be:
>The court explained that its decision turned on "whether the sweepstakes was intended to promote the sale of telephone cards or whether the telephone cards were there as an attempt to legitimize an illegal gambling device." *Id.* Driving the court's finding that the telephone cards were an attempt to legitimize an illegal gambling device, and that therefore the consideration requirement was satisfied,…" see Paragraph 19 *infra.*

See Ex. 5 Declaration of Lt. Loper described below.

19. <u>Third- party vendor Respondents fail the Davis consideration test</u>: The *Davis* Court identified certain factors that are determinative of the issue of consideration which are also present in the instant case. Those factors show that the true purpose of the sweepstakes is not donations to the Tribe, but rather as a subterfuge for gambling in a lottery paying cash prizes. The *Davis* Court recognized the following as factors to show this subterfuge:

  A. **Customers did not value the** (internet time) **donations:** The Court found that "customer receipts with over 300,000 minutes of Internet time remaining" and the fact that "all of the people there were only engaged in playing the sweepstakes" were evidence that the customers did not value the Internet time they had purchased. *Id.*, at p. 339. Here, as in *Davis,* the Ex. 5 Declaration likewise shows that as in *Davis*, it was clear that all the customers observed were there to gamble for cash and not to simply make cash donations. In fact, Ex.1 Diamond Game rules acknowledges the tie between cash donation and entries into the sweepstakes by the unusual language that "Donations may be made to the Tribe in increments ranging from $.20 to $2.40." see Ex. 1 p.1. Likewise, "Winter Sky's sweepstakes operates as a third party giveaway designed to encourage donations to the Ysleta del Sur Pueblo." Ex. 3 , p.1. These and the observations of Lt. Loper that customers behaved as if in a gambling casino demonstrates their true purpose to "win cash" prizes. See Ex. 5 Declaration of Lt. Tom Loper, ¶. 9

  B. **Casino-like atmosphere extends stay for gambling purposes:** The *Davis* Court found that as further evidence of a gambling intent the cafes created "…a place where people would be comfortable staying for a long time, purchasing internet

11

time and playing the sweepstakes" which created a "casino-like atmosphere." Here, as shown above, the donations were phased in by "increments ranging from $.20 to $2.40" (see Ex. 1 p.1) for exactly the same purpose—to encourage customers to stay and gamble on the video-devices for cash prizes by making additional "incremental" donations to obtain more sweepstakes entries and continue the play. As shown in the Ex. 5 Declaration of Lt. Tom Loper, both Speaking Rock Entertainment Center and Socorro Entertainment Center used casino-like practices of low lighting, bright video terminal displays, cash-out kiosks, and had roving employees providing refreshments—all designed to keep customers in these gambling places so they could spend more money. Moreover, he identified signs advertising cash prizes, and the operation of a "casino." See Ex. 5, ¶. 5. and Ex. 5-2.

C. **Lottery disclaimers are not normal business practices**: In *Davis,* "…customers were required to sign a form stating that they were not gambling upon entering …legitimate businesses ordinarily do not require such formalities." Here, as evidenced by Ex.1 Diamond Games both offers a disclaimer that it has "promotions that comply with all statutes and regulations…" p.2 and promotions containing a graphical display for "entertainment"—which is a euphemism[7] for an outright gambling device that employs pre-selected but random events which lead to winners or losers of cash prizes. Moreover, the Defendant Tribe and Respondents resist photography by anyone and resist inspections by Plaintiff's investigators, which, if their business operations were legitimate, would not be any cause for concern since those investigators see only what the citizens of Texas see when they engage in gambling on the gambling devices operated here. Even during the recent September 4, 2013 inspection, all the gambling devices were not operating and no customers were allowed in during the inspection.

20. Moreover, the mechanics of Defendants' third-party vendors sweepstakes operate similarly to the mechanics of the games in *Davis,* see p. 333 in that both offered a sweepstakes promotion that:

A. "allowed customers to win cash prizes."

B. "ran on computer software that created a finite number of entries."

---

[7] Likewise Accelerated operating system disclosure provides that customers can "…have their results displayed in an amusing fashion on the terminal." Ex.2, p.3; and Winter Sky operating system disclosure provides that customers may reveal their sweepstakes entries "one-by-one in an entertaining fashion." Ex.3, p.1.

12

   C. contain "software designated particular entries as winning entries."

   D. contain "software shuffled the universe of entries so that the winning entries were randomly distributed."

   E. permit sweepstakes entries available by "purchase "or by "request" (free entries)."

   F. allows winners to be revealed by "playing a variety of casino-like games available on each computer terminal."

   G. permitted winners could then "go to a clerk and receive cash."

*Davis, id*. at p. 333.

21. All the mechanics described above in the *Davis* case are also present in the instant case both at the Speaking Rock and Socorro Centers, See Ex. 5 Declaration of Lt. Loper.

22. As shown above, the 2001 injunction is violated here because under Texas law the sweepstakes operated by the Defendant Tribe and by the third-party vendor Respondents constitutes a gambling promotion under Texas Penal Code § 47.03(a)(1), (5); keeping a gambling place[8] under Texas Penal Code § 47.04(a); and for possession of gambling device, equipment, or paraphernalia under Tex. Penal Code § 47.06(a), (c).

## V.
## CONTEMPT REMEDIES SOUGHT

Plaintiff request a show cause Order from this Court, and, following hearing, another Order finding all Defendants/Respondents in contempt of the September 27, 2001 Injunction and ordering all Defendants/Respondents to:

   A. Cease all business operations at Speaking Rock Entertainment Center and Socorro Entertainment Center (other than ticket sales for the conduct of concerts);

---

[8] A "gambling place" is "any real estate, building, room, tent, vehicle, boat, or other property whatsoever, one of the uses of which is ... the conducting of a lottery or the playing of gambling devices." Tex. Penal Code § 47.01(3).

13

    B.    Remove all computers, software, hardware, and any other equipment from the Speaking Rock Entertainment Center and Socorro Entertainment Center that relates to sweepstakes, lotteries, or any other game with cash prizes.

    C.    Pay a fine of $500 per day into the registry of the Court from July 30, 2009[9] to the date of the entry of an Order.[10]

    D.    Make application[11] to this Court and obtain approval from this Court before installing any computers, software, hardware, and any other equipment that results in payout of any cash prizes.

    E.    Pay costs of the undercover investigations of $57,896.15 to the Office of Attorney General, and the legal costs of bringing this Second Motion for Contempt to final hearing.

## PRAYER

The State of Texas moves this Court to issue a Show Cause Order to require Defendants/Respondents to appear and, following presentation of evidence, to enter an order holding Defendants and Respondents in contempt of this Court's September 27, 2001 injunction, as modified, and to grant appropriate sanctions against Defendants/Respondents including the cessation of all gaming activities on reservation lands and the requirement to make application with this Court before any new operations are conducted at Speaking Rock Entertainment Center, Socorro Entertainment center, and any other location under Defendant Tribe's control.

---

[9] See Dkt#281, Memorandum Opinion and Order Granting Motion for Contempt, p. 9.

[10] See Dkt#287-2, filed August 21, 2009 acknowledging that "These sweepstakes games have been operated on the Pueblo's reservation for more than two years." Thus, before August 1, 2007, these "sweepstakes" were in operation at Speaking Rock Center.

[11] This procedure was prescribed by the Court in the August 3, 2009 Order, see p. 8 of Dkt#281. Defendants must make "…a firm detailed proposal showing that the said sweepstakes would be in compliance with Texas law." *Ysleta*, 220 F.Supp.2d at 705-07.

14

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General for Defense Litigation

JAMES "BEAU" ECCLES
Division Chief - General Litigation

s/ William T. Deane
William T. Deane
Texas Bar No. 05692500
Sean Flammer
Texas Bar No. 24059754
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1534
(512) 320-0667 FAX
*Attorneys for Plaintiff*
bill.deane@texasattorneygeneral.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via the Court's ECF electronic notification system and e-mail on this the 24th day of September, 2013 to:

| | |
|---|---|
| Mr. Randolph H. Barnhouse | Mr. Robert Francis Johnson III |
| Luebben Johnson & Barnhouse, L.L.P. | Gardere Wynne Sewell LLP |
| 7424 4th Street, N.W. | 600 Congress Ave Ste 3000 |
| Los Ranchos De Albuquerque, NM 87107 | Austin, TX 78701-2978 |
| dbarnhouse@luebbenlaw.com | rjohnson@gardere.com |

/s/ William T. Deane
William T. Deane
Assistant Attorney General

15

ATTACHMENTS

Ex. 1            Diamond Games Sweepstakes Promotion.

Ex. 2            Accelerated Marketing Sweepstakes Promotion.

Ex.3   11/27/12   Winter Sky Sweepstakes Promotion.

Ex.4   06/27/12   OAG Investigation Report.

Ex.5   09/20/13   Declaration of Lt. Tom Loper with attachments.